UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH V. FLOOD,

                                    Plaintiff,

            v.

OFFICER J. CAPPELLI; OFFICER CARL
E. DUBOIS,

                                    Defendants.

No. 18-CV-3897 (KMK)

OPINION & ORDER

Appearances:

Joseph V. Flood
Goshen, NY
*Pro Se Plaintiff*

Karen D. Edelman-Reyes, Esq.
Orange County District Attorney's Office
Goshen, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Joseph V. Flood ("Plaintiff"), currently incarcerated at Orange County Jail ("OCJ"),

brings this Action under 42 U.S.C. § 1983, against Officer J. Cappelli ("Cappelli") and Officer

Carl E. DuBois ("DuBois") (collectively, "Defendants"). Plaintiff alleges that Defendants

violated his constitutional rights when they searched and sexually assaulted him and retaliated

against him for filing a grievance. (Compl. (Dkt. No. 2).) Before the Court is Defendants'

Motion To Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot.

(Dkt. No. 17).) For the reasons stated herein, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiff's Complaint, and a letter Plaintiff submitted in opposition to Defendants' Motion, (*see* Compl.; Letter from Plaintiff to Court (Nov. 26, 2018) ("Pl.'s Letter") (Dkt. No. 24)), and are taken as true for the purpose of resolving the instant Motion.[1]

Plaintiff alleges that on April 1, 2018, at 9:15 a.m., he was sexually assaulted outside the door to his cell by Cappelli while being pat frisked.  (Compl. 2–3.)  Cappelli allegedly swiped his hand between the backside of Plaintiff's rear end.  (*Id.* at 3)  Plaintiff told Cappelli that this conduct was not necessary and Cappelli smirked and responded that Plaintiff probably liked it. (*Id.*; Pl.'s Letter 2.)  While he does not name them individually as Defendants in this Action, Plaintiff alleges that several of Cappelli's coworkers were present, specifically Officer Cappelli's brother, who was standing behind Plaintiff, Officer Mackey, Officer Mendoza, and Sergeant Berlinski, all of whom Plaintiff lists as part of the Emergency Response Team.  (Compl. 3.) Plaintiff alleges that Sheriff Dubois is the sheriff in charge of OCJ, so that although his "involvement [was] not direct," he is responsible for the conduct of his employees "to a degree." (Pl.'s Letter 3.)

Plaintiff alleges that he filed a grievance, which remains pending on appeal, and reported the incident to the PREA hotline, during which he spoke to someone who was supposed to investigate the alleged incident.  (*Id.* at 2.)[2]  Plaintiff alleges that he was confined to his cell for

---

[1] Plaintiff's filings do not have consistent pagination.  To avoid confusion, the Court cites to the ECF-generated page numbers at the top right corner of the relevant page.

[2] Plaintiff does not define "PREA" in his Letter, but he is likely referring to an inmate education video sponsored by the National Prison Rape Elimination Act ("PREA") Resource

approximately six days in retaliation for filing the grievance. (*Id.* at 2–3; Compl. 3) Plaintiff alleges that upon explaining his fear of being alone with Cappelli to the mental health counselor, Plaintiff was confined by Sergeant Zepplin ("Zepplin"), who is a sergeant of the unit wing where Cappelli also works. (Pl.'s Letter 3.)[3] Plaintiff believes that, because he expressed his feelings to the mental health counselor, Zepplin's conduct was an act of retaliation for "making an issue out of" the matter. (*Id.*) Plaintiff further alleges that Cappelli put a "no contact" on him. (*Id.*)

Plaintiff cites a PREA video that all inmates allegedly view upon intake that states that OCJ has a zero-tolerance policy for sexual abuse or sexual assault from staff or inmates alike as the basis for his grievance. (*Id.* at 2.) Plaintiff alleges that, as a result of this incident, his mental health has been disrupted. (Compl. 3.) Specifically, he felt violated and alleges that the incident has reminded him of the sexual abuse he experienced as an adolescent in foster care. (*Id.*) As a result of this alleged misconduct, Plaintiff alleges that he has experienced depression, mental anguish, humiliation, sleepless nights, and mental trauma. (*Id.*)

Plaintiff noted in his Complaint that he filed a grievance at OCJ, and that the grievance procedure at the jail covered his claims. (*Id.* at 4.) However, Plaintiff also noted that he did not know if the grievance procedure did not cover some of his claims, and answered affirmatively to the question "If you did not file a grievance, did you inform any officials of your claim(s)?" (*Id.* at 4–5.) Plaintiff noted that he informed "mental health," which submitted a report, and informed Lieutenant Potter, a Grievance and PREA Coordinator, for whom Plaintiff provided a

---

Center. National PREA Resource Center, https://www.prearesourcecenter.org/ (last visited July 17, 2019).

[3] Plaintiff does not clarify whether the confinement by Zepplin mentioned in Plaintiff's Letter is the same as the six-day period of confinement mention in his Complaint, or if Plaintiff is alleging separate additional confinements.

written statement.  (*Id.* at 5.)  Finally, Plaintiff asserts that nothing has been sent back to him on "this [r]eport," although it is unclear what report he is specifically referencing.  (*Id.*)  In response to the question on the Complaint asking Plaintiff to detail all steps he took to grieve his claims, Plaintiff alleges that his initial grievance was denied for lack of merit, his appeal to the Chief Administrative Officer was denied on merit, and he is presently appealing to the Citizens' Policy and Complaint Review Council.  (*Id.* at 4.)  Plaintiff asserts that the grievance remains pending on appeal, with no response to date.  (Pl.'s Letter 2.)

B.  Procedural History

Plaintiff's Complaint and application to proceed in forma pauperis ("IFP") were filed on May 1, 2018.  (Dkt. Nos. 1, 2.)  The Court granted Plaintiff's IFP application on May 15, 2018. (Dkt. No. 6.)  On May 24, 2018, the Court issued an Order directing service on Defendants. (Dkt. No. 8.)  On August 6, 2018, Defendants filed a letter requesting a pre-motion conference in anticipation of filing a Motion To Dismiss.  (Letter from Karen Edelman-Reyes, Esq. to Court (Dkt. No. 14).)  The Court granted the request and set a briefing schedule on August 21, 2018. (Dkt. No. 15.)

On September 12, 2018, Defendants filed the instant Motion To Dismiss and accompanying papers.  (Not. Of Mot.; Decl. of Karen Edelman-Reyes, Esq. ("Edelman-Reyes Decl.") (Dkt. No. 18); Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 19); Not. of Mot. to a Pro Se Litigant (the "Notice") (Dkt. No. 20).)[4]  On November 5, 2018, Defendants filed a declaration in further support of the Motion To Dismiss.  (Decl. of Karen Edelman-Reyes, Esq. in Further Supp. of Mot. To Dismiss ("Edelman-Reyes's Reply Decl.") (Dkt. No. 22).)

_____

[4] The Notice to Plaintiff was filed twice on the docket, the first time as Dkt. No. 16, and the second time as Dkt. No. 20.

Plaintiff filed a response in opposition to the Motion on November 26, 2018. (Pl.'s Letter.) On December 6, 2018, Defendants filed a reply. (Letter from Karen Edelman-Reyes, Esq., to Court (Dkt. No. 25).) The Motion was deemed fully submitted on December 7, 2018. (Dkt. No. 26.)

## II. Discussion

Defendants argue that Plaintiff fails to sufficiently allege personal involvement by Dubois, fails to state a claim for violations of his Fourth and Eighth Amendment rights, fails to state a claim for retaliation under the First Amendment, fails to state a claim for due process violations under the Fourteenth Amendment, and that Plaintiff failed to exhaust his administrative remedies. (Defs.' Mem. 1.) County Defendants also argue they are entitled to qualified immunity. (*Id*.) The Court will address each argument to the extent necessary.

### A. Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601,

605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including, as relevant here, "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted).

### B. Analysis

#### 1. Personal Involvement of Defendant Dubois

Defendants argue that the Complaint should be dismissed against Dubois because he was not personally involved in the alleged constitutional violations. (Defs.' Mem. 4–6.) "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference

> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* at 139 (italics and internal quotation marks omitted) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff must plausibly allege that Defendants' actions fall into one of the five categories identified above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims that do not require a showing of discriminatory intent" post-*Iqbal*).

Plaintiff has failed to plausibly allege the personal involvement of Dubois. Plaintiff's Complaint alleges that Cappelli sexually assaulted him and describes the events leading up to and following this event. (*See* Compl. 2–3.) The Complaint contains no allegations whatsoever that Dubois was involved in, aware of, or somehow permitted these incidents to take place. Indeed, his name and position appears nowhere in the Complaint, other than in the caption and summarily on page two. (*See* Compl. 1–5.) Plaintiff admits that Dubois was not directly involved but argues he should be held accountable as a supervisor. (Pl.'s Letter 3.) This alone is grounds to dismiss the claims against him. *See Davis v. Cheverko*, No. 16-CV-4034, 2017 WL 6397749, at *4 (S.D.N.Y. Dec. 13, 2017) (collecting cases); *Perkins v. City of New York*, No. 14-CV-3779, 2017 WL 1025987, at *2 (S.D.N.Y. Mar. 15, 2017) ("Where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." (alteration and internal quotation marks omitted)). That Dubois allegedly held a supervisory role does not change the analysis. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must

plead that each Government-official defendant, through the official's own individual actions, has

violated the Constitution."); *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2014)

("Where a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through

the 'chain of command' (i.e., under the doctrine of respondeat superior) is insufficient to show

his or her personal involvement in that unlawful conduct." (citations omitted)).  There are, in

sum, no alleged facts showing that Dubois was personally involved in the alleged

unconstitutional deprivation at issue.  *See Falls v. Pitt*, No. 16-CV-8863, 2018 WL 3768036, at

*6 (S.D.N.Y. Aug. 8, 2018) (holding that personal involvement was not established where the

plaintiff failed to allege the defendants were "present" for the alleged violation or "participated

directly" in or "somehow permitted" the alleged violation).  Accordingly, all claims against

DuBois are dismissed.

### 2.  Eighth Amendment Sexual Assault Claim

Plaintiff also claims that he was subjected to cruel and unusual punishment in violation of

the Eighth Amendment.  Specifically, Plaintiff alleges that on April 1, 2018, Cappelli violated

his Eighth Amendment rights by groping him under the guise of conducting a body pat frisk.

(Compl. 3.)  Cappelli argues that Plaintiff has not plausibly alleged an Eighth Amendment

violation.  (Defs.' Mem. 6–10.)

The Eighth Amendment protects prisoners from cruel and unusual punishment by prison

officials.  *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991).[5]  "To state an Eighth Amendment

---

[5] Because Plaintiff was a convicted prisoner at the time of the events underlying the
Complaint, (*see* Edelman-Reyes Decl., Ex. B (Certificate of Disposition as to Indictment 696-
2017), Ex. C (Certificate of Disposition as to Information 118S-2018)), his conditions of
confinement claim arises under the Eighth Amendment.  *See Delacruz v. City of New York*, No.
15-CV-3030, 2017 WL 2377984, at *3 (S.D.N.Y. May 31, 2017) ("Conditions of confinement
claims brought by convicted prisoners are governed by the Cruel and Unusual Punishments
Clause of the Eighth Amendment, whereas claims brought by pre-trial detainees are governed by

claim, a prisoner must allege two elements, one subjective and one objective." *Crawford v.*

*Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). "First, the prisoner must allege that the defendant

acted with a subjectively 'sufficiently culpable state of mind.' Second, he must allege that the

conduct was objectively 'harmful enough' or 'sufficiently serious' to reach constitutional

dimensions." *Id.* (citations and internal quotation marks omitted) (quoting *Hudson v. McMillian*,

503 U.S. 1, 8 (1992)).

Here, Plaintiff alleges Cappelli "[l]iterally swiped [h]is [h]and in [b]etween my

[b]ackside of my [r]ear end" during a pat down frisk outside his cell door in the presence of other

corrections officers. (Compl. 2–3.) When Plaintiff "told [Cappelli] [ ] he didn't need to put his

hand in between the crack of my [a]ss" Cappelli told Plaintiff "you probably liked it." (*Id.* at 3.)

Even assuming that these allegations are sufficient to satisfy the objective prong, *but see Perez v.*

*Ponte*, 236 F. Supp. 3d 590, 619 (E.D.N.Y. 2017) (collecting cases for proposition that "'pat

frisks' . . . typically do not violate the Eighth Amendment's proscription against Cruel and

Unusual Punishment"), *adopted by* 2017 WL 1050109 (E.D.N.Y. Mar. 15, 2017), they are

insufficient to plausibly show that Cappelli acted "to arouse or gratify [himself] or humiliate

---

the Due Process Clause of the Fourteenth Amendment." (citing *Darnell v. Pineiro*, 849 F.3d 17,
29 (2d Cir. 2017))), *adopted by*, 2017 WL 2963490 (S.D.N.Y. July 11, 2017), *appeal dismissed*,
No. 17-2542, 2018 WL 6267098 (2d Cir. 2018).

    The Court is entitled to take notice of matters of public records, such as Plaintiff's
convictions, and therefore considers that he was a convicted inmate at all times relevant to this
Motion. *See Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 321 (S.D.N.Y. 2015) ("In
considering a motion to dismiss, a court is permitted to take judicial notice of public records
. . . ."); *Wims v. New York City Police Dep't*, No. 10-CV-6128, 2011 WL 2946369, at *2
(S.D.N.Y. July 20, 2011) (noting that "'a district court may rely on matters of public record in
deciding a motion to dismiss . . . including arrest reports, criminal complaints, indictments and
criminal disposition data"); *U.S. Fid. & Guar. Co. v. Petroleo Brasileiro S.A.-Petrobras*, No. 98-
CV-3099, 2001 WL 300735, at *9 n.7 (S.D.N.Y. Mar. 27, 2001) ("With respect to materials
from the [s]tate [c]ourt [a]ction, the [c]ourt may take judicial notice of the relevant pleadings,
motion papers, orders, and judgments in the [s]tate [c]ourt [a]ction without converting [the
defendant's] motion to one for summary judgment.").

[Plaintiff]," *Crawford*, 796 F.3d at 257–58. The Second Circuit has held that "[a] corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." *Id.* at 257; *see also id.* (holding that "a single incident of sexual abuse" can constitute cruel and unusual punishment "if sufficiently severe or serious" (citing *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997))). "In determining whether an Eighth Amendment violation has occurred, the principal inquiry is whether the contact is incidental to legitimate official duties, such as a justifiable pat frisk or strip search, or by contrast whether it is undertaken to arouse or gratify the officer or humiliate the inmate." *Id.* at 257–58 (citing *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). The only allegation regarding Cappelli's intent or state of mind is his comment to Plaintiff that Plaintiff "probably liked it." (Compl. 3.) This conclusory allegation is not sufficient to state an Eighth Amendment claim for sexual assault. *See Boddie*, 105 F.3d at 859–61 (finding no Eighth Amendment violation from incidents including a female corrections officer making a pass at the plaintiff, squeezing his hand, touching his penis, calling him a "sexy black devil," and bumping into him "with her whole body vagina against penis"); *Grant v. Norfleett*, No. 17-CV-328, 2017 WL 1902150, at *3 (D. Conn. May 9, 2017) ("[T]he Complaint includes only a conclusory allegation that the defendants conducted the search for their own sexual gratification, and an assertion that on occasions after the plaintiff was strip searched, the defendants 'watched him like a piece of meat.'"); *see also Shaw v. Prindle*, 661 F. App'x 16, 19 (2d Cir. 2016) (noting that the court "cannot infer solely from the thoroughness of the search"—described as "excessive searching of [the] crotch area and in between his buttocks and massaging of his rectum and groin area"—that the defendant "intended to search . . . with intent to arouse or gratify [his] sexual

desires or to humiliate [the plaintiff]" (alterations and internal quotation marks omitted); *cf.*

*Crawford*, 796 F.3d at 257–58 (finding Eighth Amendment violation where the defendant

"fondl[ed] and squeeze[ed] [the plaintiff's] penis in order to make sure [he] did not have an

erection," because "[t]here is no penological justification for checking to see if an inmate has an

erection"); *id.* at 258–59 (noting that "demeaning comments, including the statements 'that

doesn't feel like a penis to me,' 'I'll run my hands up the crack of your ass if I want to,' and

subsequent taunts about having seen [the plaintiff's] penis," all "suggest[ed] that [the defendant]

under took the search in order to arouse himself, humiliate [the plaintiff], or both"). Thus, the

Court grants Defendants' Motion To Dismiss the Eighth Amendment claim.

### 3. First Amendment Retaliation Claim

Defendants argue that Plaintiff's six-day confinement was not a retaliatory action and that

Plaintiff fails to allege a causal connection between the filing of his grievance and the six-day

confinement. (Defs.' Mem. 13–16.)[6]

"Prisoners have a constitutional right to petition the government, and it is a violation of

§ 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Bartley v.*

*Collins*, No. 95-CV-10161, 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006) (citing *Gayle v.*

*Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). To state a First Amendment retaliation claim,

---

[6] Defendants improperly submit Plaintiff's disciplinary record and attempt to interject arguments based on documents that the Court may not consider at the pleading stage. (*See* Defs.' Mem. 15 (citing Edelman-Reyes's Decl. Ex. E (Plaintiff's Disciplinary Record ("Pl.'s Disciplinary Hearing Record"))).) As noted, the Court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.*, 199 F.3d at 107. Defendants argue that Plaintiff's Prison Disciplinary Hearing Record is incorporated by reference, (Defs.' Mem. 4), but Plaintiff's Complaint does not reference any disciplinary hearing, and it is not at all clear to the Court that Plaintiff possessed or knew about the records that Defendants now submit when he brought this Action. The Court therefore does not consider Defendants' arguments based on Plaintiff's disciplinary record.

Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant took adverse action against . . . [P]laintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation marks omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same). "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation and quotation marks omitted)).

Plaintiff asserts that he filed a grievance at OCJ, specifically a claim of sexual assault and/or abuse with a PREA investigator, (Compl. 4), and that he was subsequently locked in his cell for approximately six days in retaliation for his complaint, (*id.* at 3). Plaintiff asserts that he told a mental health counselor that he was fearful of walking alone within the facility hallways while Cappelli was on hallway detail because he was fearful he would be searched again. (Pl.'s Letter 3.) Plaintiff was subsequently confined by Zepplin in what Plaintiff alleges was an act of retaliation. (*Id.*) Finally, Plaintiff alleges that Cappelli, who works in the same unit as Zepplin, put a "no contact" on him. (*Id.*)

Defendants do not contest that filing a grievance is protected speech, as indeed "[i]t is well-established that inmates' filing of grievances is a constitutionally protected exercise of their

right under the First Amendment to petition the government for the redress of grievances."

*Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *4 (S.D.N.Y. July 16, 2013) (citations

omitted); *see also Dolan*, 794 F.3d at 294 ("It is well established that retaliation against a

prisoner for pursuing a grievance violates the right to petition [the] government for the redress of

grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983."

(citation and quotation marks omitted)).

Defendants do, however, argue that six days of confinement does not constitute an

adverse action for purposes of a First Amendment retaliation claim. (Defs.' Mem. 14.) An

adverse action is any "retaliatory conduct that would deter a similarly situated individual of

ordinary firmness from exercising his or her constitutional rights." *Davis v. Goord*, 320 F.3d

346, 353 (2d Cir. 2003) (citation omitted). In determining whether a prison official's conduct

constitutes adverse action, "the court's inquiry must be tailored to the different circumstances in

which retaliation claims arise, bearing in mind that prisoners may be required to tolerate more

than average citizens." *Id.* (citation, quotation marks, and alterations omitted). "[T]he test,

however, is not whether [the] plaintiff . . . himself was chilled (if that were the standard, no

plaintiff likely would prevail, for the very commencement of a lawsuit could be used by [the]

defendants to argue that the plaintiff was not chilled)." *Id.* at 354 (citation omitted). Defendants

notably do not cite any caselaw for the proposition that being placed in confinement for six days

cannot constitute an adverse action, and indeed they cannot because the Second Circuit and

lower courts therein have found that being placed in keeplock or being otherwise confined is

indeed an adverse action. *See Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004) (holding that

placing plaintiff in keeplock for three weeks was an adverse action); *Hayes v. Dahkle*, No. 16-

CV-1368, 2018 WL 7356343, at *15 (N.D.N.Y. Dec. 11, 2018) (assuming that placing plaintiff

in keeplock for one day constitutes an adverse action); *Lugo v. Van Orden*, No. 07-CV-879, 2008 WL 2884925, at *4–5 (S.D.N.Y. July 23, 2008) (assuming that placing plaintiff in keeplock for five days constitutes an adverse action, stating that the holding of *Gill* was not that confinement must have lasted for *weeks*, and pointing out that "less adverse" action such as being moved to a different housing unit have been held to be sufficient to state a claim for retaliation); *Keesh v. Goord*, No. 04-CV-271, 2007 WL 2903682, at *10 (W.D.N.Y. Oct. 1, 2007) (holding that placing plaintiff in keeplock for one day during which he may have missed meals constituted an adverse action).[7] Therefore, the Court finds that Plaintiff alleges an adverse action.

Plaintiff must, however, also allege a "causal connection" between the protected conduct and the adverse action. *Garcia v. Watts*, No. 08-CV-7778, 2009 WL 2777085, at *11 (S.D.N.Y. Sept. 1, 2009); *see also Dawes,* 239 F.3d at 492 (holding that in order to satisfy the causation requirement, allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action" (citation, alteration, and quotation marks omitted)). To meet this burden, Plaintiff must allege facts suggesting that the protected conduct was a "'substantial or motivating factor' in the prison officials' decision to take action against [him]." *Smith v. Christopher*, No. 06-CV-1196, 2008 WL 4283519, at *10 (N.D.N.Y. Sept. 18, 2008) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)); *Van Dunk v. Brower*, No. 11-CV-4564, 2013 WL 5970172, at *8 (S.D.N.Y. Nov. 7, 2013) ("The

---

[7] Defendants also argue that there was no retaliation here because Plaintiff was able to and ultimately did file grievances and this lawsuit after the allegedly retaliatory conduct occurred. (Defs.' Mem. 14.) This argument fails because in *Gill*, the Second Circuit explained that although "subjective chilling is a general requirement, where a plaintiff alleges that the protected conduct at issue is the prior filing of a *grievance* or *lawsuit* against the defendant, it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation." *Gill*, 389 F.3d at 383–84. Thus, it is not dispositive that Plaintiff filed grievances even after the alleged adverse action.

element of intent [in a First Amendment retaliation claim] requires an assessment of what evidence, if any, demonstrates that Defendants' conduct 'was motivated by or substantially caused by [Plaintiff's] exercise of free speech.'" (ultimately quoting *Gagliardi v. Vill. of Pawling*, 18 F.3d 188, 194 (2d Cir. 1994))); *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 371 (S.D.N.Y. 2011) (same); *cf. Washington v. Afify*, 681 F. App'x 43, 46 (2d Cir. 2017) (reinstating retaliation claim in part because there was evidence of "retaliatory animus" where plaintiff alleged that officers confronted him directly about his practice of filing grievances before they issued the allegedly false misbehavior report against him); *Fann v. Graham*, No. 15-CV-1339, 2018 WL 1399331, at *9 (N.D.N.Y. Jan. 11, 2018) (denying summary judgment motion where there was evidence the correction officer made comments to plaintiff that could be interpreted as threatening before issuing him an allegedly false misbehavior report), *adopted by* 2018 WL 1399340 (N.D.N.Y Mar. 19, 2018). Circumstantial facts suggesting a retaliatory motive include "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation." *Baskerville v. Blot*, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing *Colon*, 58 F.3d at 872–73).

Here, Plaintiff alleges that he filed a grievance alleging sexual assault with a PREA investigator and that he was subsequently locked in his cell for six days in retaliation for this grievance. (Compl. 2–3.) Plaintiff further alleges that he told a mental health counselor that he was fearful of walking in the hallway while Cappelli was on hallway detail and that he was fearful he would be searched again, and that he was subsequently confined by Zepplin in an act of retaliation. (Pl.'s Letter 3.) Plaintiff also alleges that Cappelli, who works in the same unit as

Zepplin, put a "no contact" on him.  (*Id.*)

Plaintiff does not, however, allege the dates during which he was confined to his cell or how soon after he filed his grievance his confinement took place.  "At most, Plaintiff may have intended to rely on temporal proximity between his complaints and his [confinement to his cell] to demonstrate a causal connection," however, Plaintiff did not specify when he was confined to his cell, and this prevents the Court from inferring retaliation based on temporal proximity alone. *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2019 WL 3202747, at *10 (S.D.N.Y. July 16, 2019) (holding that court could not infer retaliation based on temporal proximity where plaintiff alleged when the adverse action occurred but failed to allege when the protected speech occurred); *see also Feliciano v. City of New York*, No. 14-CV-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (holding that where plaintiff did "not provide the date" he engaged in protected activity, it was "impossible for the Court to determine the temporal proximity of the alleged retaliatory acts to the protected conduct"); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014) (dismissing retaliation claim where the complaint "fails to state with even a modicum of specificity when the relevant events occurred").

Moreover, Plaintiff fails to allege any connection between the individuals with whom he filed his grievances and the individuals who retaliated against him.  For example, Plaintiff does not allege that the mental health counselor or the PREA investigator told anyone about Plaintiff's statements or that the officers who ultimately confined Plaintiff had any knowledge of those statements.  Nor does Plaintiff allege that Zepplin and Cappelli ever discussed Plaintiff or his grievances or his confinement.  Plaintiff merely alleges that Zepplin and Cappelli worked together, (Pl.'s Letter 3), but fails to provide any specifics about how the individuals who received his grievances and the individuals who implemented Plaintiff's confinement were

connected.  *See Soto v. Iacavino*, No. 01-CV-5850, 2003 WL 21281762, at *1–2 (S.D.N.Y. June 4, 2003) (dismissing First Amendment retaliation claim where plaintiff alleged he filed a grievance and nursing staff subsequently failed to provide him with medical care because plaintiff failed to allege any causal connection whatsoever); *Jones v. Harris*, 665 F. Supp. 2d 384, 399–400 (S.D.N.Y. 2009) (dismissing First Amendment retaliation claim where plaintiff failed to allege any facts tending to show that one corrections officers destroyed Plaintiff's property at the behest of another CO); *see also Trisvan v. Annucci*, 284 F. Supp. 3d 288, 303 (S.D.N.Y. 2018) (dismissing First Amendment retaliation claim where plaintiff failed to allege "the dates and details of all relevant events as well as any facts that plausibly support the inference that he was subjected to adverse actions in retaliation for having engaged in the protected activity").  Accordingly, Plaintiff's First Amendment retaliation claim must be dismissed.

4.  Fourth Amendment Unreasonable Search Claim

Plaintiff cites the Fourth Amendment in his filings and the Court thus liberally reads his Complaint to allege a Fourth Amendment violation for the invasive pat-frisk.  (Compl. 3.) Plaintiff alleges that, in the presence of other prison officials, Cappelli "literally swiped his hand in between the backside of my rear end."  (*Id.*)  Defendants argue that Plaintiff fails to sufficiently allege a violation of his Fourth Amendment Rights.  (Defs.' Mem. 10–13.)

"The Fourth Amendment 'protects individual privacy against certain kinds of governmental intrusion,' and it is well-established that its protections extend to prisoners and pretrial detainees."  *Holland v. City of New York*, 197 F. Supp. 3d 529, 542 (S.D.N.Y. 2016) (quoting *Katz v. United States,* 389 U.S. 347, 350 (1967)).  Thus, "although the inmates' right to privacy must yield to the penal institution's need to maintain security, it does not vanish

altogether." *Jean-Laurent v. Lawrence*, No. 12-CV-1502, 2013 WL 1129813, at *8 (S.D.N.Y. Mar. 19, 2013) (alteration and quotation marks omitted); *see also Little v. City of New York*, No. 13-CV-3813, 2014 WL 4783006, at *2 (S.D.N.Y. Sept. 25, 2014) ("Although the constitutional rights of prison inmates are restricted because of the institutional needs of imprisonment, the Fourth Amendment still requires that strip searches of inmates be reasonable." (citation omitted)); *Florence v. Bd. of Chosen Freeholders,* 566 U.S. 318, 328 (2012) ("[C]orrectional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities."). "The reasonableness of a strip search, in turn, requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted . . . ." *Holland*, 197 F. Supp. 3d at 542 (citations and quotation marks omitted). Additionally, "[t]he presence of other inmates and officers, males and females, does not alter th[e] determination" that strip searches are constitutional. *Israel v. City of New York*, No. 11-CV-7726, 2012 WL 4762082, at *3 (S.D.N.Y. Oct. 5, 2012). Finally, "[b]ecause an inmate 'bears the burden of showing that a search was unreasonable,' to survive a motion to dismiss, the plaintiff "must 'plead facts sufficient to give rise to a plausible inference' that the search he challenges was unreasonable under the standards described above." *Little*, 2014 WL 4783006, at *2 (citation and quotation marks omitted).

Plaintiff summarily alleges that he was searched outside his cell and that Cappelli swiped his hand between Plaintiff's backside. (Compl. 2–3.) Plaintiff does not allege why he was searched and offers no detail about the duration of the search or any other facts about the search. Plaintiff's allegation that Cappelli swiped his hand between his backside, without any further

detail as to the unreasonableness of the search, is insufficient to allege a violation of the Fourth Amendment. *See Green v. Martin*, 224 F. Supp. 3d 154, 166–67 (D. Conn. 2016) (dismissing Fourth Amendment claim where prisoner alleged that he was strip searched in his cell while his cellmate was present, but failed to allege any facts that the search was unreasonable); *Friedman v. Young*, 702 F. Supp. 433, 438 (S.D.N.Y. 1988) (dismissing Fourth Amendment claim because even "[a]ssuming [officer's] pat-down included touching [the plaintiff's] genitalia while conducting the search, such conduct is not unreasonable in the absence of any showing of excessive force"). Here, Plaintiff has not pled any facts to suggest that the alleged search was unreasonable or unrelated to legitimate penological interests. Moreover, even accepting Plaintiff's allegation that Cappelli told him he probably "[l]iked it," (Compl. 3; Pl.'s Letter 2),"verbal harassment during the [strip] search does not cause the search to become unconstitutional." *Bowden v. Duffy*, No. 13-CV-717, 2014 WL 338786, at *4 (S.D.N.Y. Jan. 30, 2014); *see also Vaughn v. Strickland*, Nos. 12-CV-2696, 12-CV-3335, 12-CV-2995, No. 12-CV-3333, 2013 WL 3481413, at *6–7 (S.D.N.Y. July 11, 2013) (dismissing Fourth Amendment claim where a prisoner alleged verbal abuse during an intrusive strip search). Accordingly, Plaintiff's Fourth Amendment claim is dismissed.

### 5. Fourteenth Amendment Procedural Due Process Claim

Plaintiff cites the Fourteenth Amendment in his filings and the Court thus liberally reads his Complaint to allege a Fourteenth Amendment violation. (Compl. 3.) Defendants argue that Plaintiff fails to state a Fourteenth Amendment Claim "presumably regarding" a disciplinary hearing against him. (Defs.' Mem. 16–18.) "To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004)

(alterations and quotation marks omitted).  The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings.  *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment).  However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test."  *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted).  The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain period of . . . confinement automatically fails to implicate due process rights."  *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations and quotation marks omitted).  Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions."  *Id.* (citations and quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an

intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Indeed, the Second Circuit has cautioned that "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual . . . conditions." *Palmer*, 364 F.3d at 65–66.

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken." *Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

"[E]ven if an inmate is segregated for fewer than 101 days, his liberty interest may still be implicated if 'the conditions were more severe than the normal punitive segregation conditions . . . or a more fully developed record showed that even relatively brief confinements under normal punitive segregation conditions were, in fact, atypical.'" *Samuels v. Davis*, No. 14-CV-7204, 2015 WL 4653238, at *2 (S.D.N.Y. July 28, 2015) (alterations omitted) (quoting

*Palmer*, 364 F.3d at 65). However, Plaintiff's due process claim must be dismissed nonetheless because Plaintiff has asserted *no* facts whatsoever that would allow the Court to assess whether the "regime to which [he] was subjected" constituted a significant and atypical hardship compared with ordinary prison conditions. *Brooks*, 1997 WL 436750, at *4. Plaintiff alleges that he "was confined by a Sergeant Zepplin for [] expressing [his] feelings to the mental health counselor in what [he] believed was a re[tal]iation for me making an issue out of [t]his matter;" specifically, Plaintiff alleges that he "was subjected to cell confinement for a period of six days." (Pl.'s Letter 2–3.) Plaintiff does not, however, allege that any type of disciplinary hearing was held, let alone that there were any shortcomings with respect to that disciplinary hearing. Plaintiff also does not allege any factual details about the specifics of his six-day confinement. *See Samuels*, 2015 WL 4653238, at *3 (dismissing due process claim where "the complaint does not allege *any* facts about the conditions [of confinement], including whether they were atypical or unusually harsh"); *Landron v. City of New York*, No. 14-CV-1046, 2014 WL 6433313, at *5 (S.D.N.Y. Nov. 7, 2014) (holding that plaintiff who was held in disciplinary confinement for 18 days but did not indicate "that he endured any unusual conditions during his confinement . . . ha[d] not stated a claim for deprivation of a liberty interest cognizable under [§] 1983"); *Torres v. Logan*, No. 10-CV-6951, 2011 WL 1811003, at *4 (S.D.N.Y. May 11, 2011) (dismissing due process claim based on confinement of "a little over two-thirds" of his 90-day sentence where the plaintiff "fail[ed] to allege any facts regarding the conditions of his confinement, including whether they were abnormal or unusual" (alteration omitted)), *adopted by* 2011 WL 3894386 (S.D.N.Y. June 13, 2011); *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 607 (S.D.N.Y. 2009) (finding that a plaintiff failed to plead "a cognizable liberty interest" based on 280 days of disciplinary confinement because the plaintiff "failed to make any allegations

detailing the conditions of his confinement . . . , and because the duration of his confinement was shorter than confinements that courts in this Circuit have deemed sufficient to impose per se atypical or significant hardship"). Therefore, because Plaintiff has not alleged facts suggesting that he was deprived of a liberty interest, his procedural due process claim fails. *See Palmer*, 364 F.3d at 64 (noting that there is "no right to due process at [a disciplinary] hearing *unless* a liberty interest was infringed as a result" (citations, quotation marks, and original alterations omitted)).[8]

---

[8] Because the Court dismisses the Complaint on other grounds it need not separately decide whether Plaintiff failed to exhaust his administrative remedies. (*See* Defs.' Mem. 18–21.) The Court notes, however, that although the Prison Litigation Reform Act's ("PLRA") exhaustion requirement is mandatory, *see Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016), and "requires proper exhaustion, which means using all steps that the prison grievance system holds out," *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citations, alterations, and quotation marks omitted), failure to exhaust is an affirmative defense, not a pleading requirement, *see Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (citations omitted). As such, Defendants bear the burden of proving failure to exhaust, *see McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003), and "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones v. Bock*, 549 U.S. 199, 216 (2007). Therefore, "dismissal is appropriate on a motion to dismiss where failure to exhaust is clear on the face of the complaint." *Brinson v. Kirby Forensic Psych. Ctr.*, No. 16-CV-1625, 2018 WL 4680021, at *6 (S.D.N.Y. Sept. 28, 2018) (citations omitted).

Here, Plaintiff alleges several specific facts regarding his attempts to exhaust his administrative remedies. Plaintiff alleges he filed a grievance at the OCJ; informed mental health, who submitted a report; and informed Lieutenant Potter, a Grievance Coordinator, for whom he provided a written statement. (Compl. 4–5.) Plaintiff detailed the steps he took to file his grievance, specifically, Plaintiff noted that his initial grievance was denied for lack of merit, his appeal to the Chief Administrative Officer was denied on merit, and he is presently appealing to the Citizens Policy and Complaint Review Council. (*Id.* at 4.) Plaintiff asserts that the grievance remains pending on appeal, with no response to date. (Pl.'s Letter 2.) Defendants correctly point out that according to Plaintiff's own submissions he has not yet received a final determination as to his appeal, and thus he may not have gone through all the required steps of New York's three-tiered grievance process. (Defs.' Mem. 19–20.) *See Colon v. Annucci*, No. 17-CV-4445, 2018 WL 4757972, at *17 (S.D.N.Y. Sept. 28, 2018); *Terry v. Hulse*, No. 16-CV-252, 2018 WL 4682784, at *6 (S.D.N.Y. Sept. 28, 2018). However, Defendants do not and cannot at this stage submit documentation or other proof that the Court may consider detailing what the status of Plaintiff's appeal is. In support of their Motion To Dismiss, Defendants include Plaintiff's Complaint, certificates of disposition, Plaintiff's grievance attached to his Complaint, and Plaintiff's disciplinary record at OCJ during the time period at issue. (*See* Edelman-Reyes's Decl.) This information does not clarify the grievance process available to Plaintiff nor elucidate whether Plaintiff failed to complete the grievance process. *See Madison v.*

### III. Conclusion

For the reasons stated above, Defendants' Motion To Dismiss is granted. Because this is the first adjudication of Plaintiff's claims, the dismissal is without prejudice. If Plaintiff wishes to file an amended complaint, Plaintiff must do so within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is advised that the amended complaint will replace, not supplement, the instant Complaint. The amended complaint must contain *all* of the claims, factual allegations, and exhibits that Plaintiff wishes the Court to consider. If Plaintiff fails to abide by the 30-day deadline, his claims may be dismissed with prejudice.

The Clerk is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 17), the Notice to Plaintiff that also appears as a motion, (Dkt. No. 16), and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

Dated: August 12, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

*Wright*, No. 02-CV-10299, 2004 WL 816429, at *1 (S.D.N.Y. Apr. 13, 2004) (noting that "the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss," and that "the defendants must present proof of non-exhaustion" (citation and quotation marks omitted)). If Plaintiff choses to amend his Complaint, the Parties should address these concerns. Also because the Court concludes that Plaintiff fails to plausibly allege any violation of his constitutional rights, it need not at this stage consider Defendants' argument that they are entitled to qualified immunity. (Defs.' Mem. 21–22.)